Constance v. Martuscello Chakua v. Abraham Ray v. Macquat Good morning. Gupta v. Lynch and McCarthy v. Bank of New York Mellon are on submission. We'll hear the first case, Constance v. Martuscello. May it please the court. Good morning, your honors. My name is Gary Shore and I represent the petitioner in this 2255 habeas proceeding. This is a very interesting and parenthetically political case, raising fundamental constitutional issues which the court should address and which require a reversal of the district court's denial of the petition. As you are aware, the petitioner entered into a bargain for plea with a promise sentence that was approved and accepted by the trial court. This plea and promise was part of a package deal with the attorney general's office for related cases in both Brooklyn and Suffolk County. This plea and promise was negotiated and accepted with both the prosecution's and the court's knowledge of the petitioner's alleged pass back. At what point did the first Jeopardy attached when the plea was accepted? It wasn't an unconditionally accepted guilty plea, was it? The guilty plea was unconditional. What was conditional was the sentence. Aren't the two inextricably intertwined? Well, our position is that they're not, Judge, in that once the court has only two options, if it later learns something that it didn't know, and our position is that the court knew all the facts relating to the defendant's background at the time that it took the plea, but if the court learns new information and cannot honor its commitment, the court has only two options. One option is to let the defendant, to offer the defendant the opportunity to withdraw his plea, which the defendant didn't do in this case. The court never really even offered it as far as the record reflects. Or if the defendant doesn't withdraw the plea because it's his right, he has bargained for some finality in the plea bargaining process. If the court cannot honor the sentence commitment, then the court's alternative, and the defendant doesn't withdraw the plea, then the court's alternative is to sentence the defendant to whatever the court determines should be the appropriate sentence at that time. Could you help me understand, I'm trying to understand, what difference does it make functionally that the trial court first vacated the plea and then later offered the enhanced sentence? What, isn't that, why isn't that functionally the same as what you say is required? I think that due process requires the court so that the defendant has an opportunity to appeal and preserve all the issues. The due process requires the court to sentence him with the enhanced sentence, then he would have the opportunity to appeal that, to argue to an appellate court that it was improper. The defendant didn't want to withdraw his plea, he never consented to that, and the cases are clear that his plea can only be vacated with his consent, and he never sought that with the court. But what is, back to Judge Katzmann's question, what's the functional difference between what you're suggesting should have happened and what actually happened, in terms of the net result? In terms of the net result, the defendant would have been sentenced to a greater sentence than the bargain for a sentence, he would have had an opportunity, I mean we understand that, he would have had an opportunity to appeal that and he wouldn't have gone to trial, and he wouldn't have received the sentence that he received in this case. Would not have? No. How do we know that? Because if the court had sentenced him to the sentence that he had, that the court had in mind, and that the court offered him months later, that's a much lesser sentence than the one that was actually imposed in this case. Supposing they never went through the intermediate stage, and everything happens as you say, and the court says never, how did I get myself in this? Well, you bound yourself to the plea, you said you were pleading guilty, and now I'm giving you a sentence. And then the defendant would have been able to argue to an appellate court that the sentence was unreasonable, and that the sentence was outside the bounds of due process. Isn't there, in this case, the plea deal, right, required that your client plead with respect to, guilty with respect to one crime. But after the jury, right, the jury returned a guilty verdict based on six crimes, correct? Correct. So doesn't that sort of account for the difference in large part? Well, you put blinders on without looking at the sentencing, the actual sentencing proceeding, you could reach that conclusion. But I think that the reality... Doesn't that come in common sense though? Well, I think the reality of the situation in this case was that he was, the defendant was sentenced for his past, or alleged past activities in Haiti, not based on mortgage fraud. I mean, the 10 to 20, well, it was a greater than 10 to 20 sentence. The judge gave him a sentence greater than the law allowed, and by operational law it was reduced to 10 to 20. But that sentence is clearly outside the heartland of sentences for mortgage fraud in the state court. I understood, perhaps incorrectly, that the judge's reference to the crimes in Haiti, really a reference made to indicate that your client was a recidivist who embarked on other crimes. Well, I think it was much more than that, and I don't think there was any basis for finding my client was a recidivist. Our position is that the crimes were speculative, hearsay, unreliable, information that the court should not have relied on, again under due process, in entering a sentence and determining the appropriate sentence. You say that, at least as I understand it, that the judge's reference to the crimes in Haiti, the conditions of the plea, were satisfied because the probation report contained no new information, and the trial court never conditioned the sentence promise on no information being received from third parties. But you've got, we have the Celikoff case, which seems to suggest that information obtained from other reliable sources can be used. Well, there's two part answers to that. One is we don't believe that the sources were reliable, and that the defendant didn't have the opportunity to contest those sources. And secondly, that under Celikoff, the remedy was that the defendant was, as we discussed earlier, sentenced to a greater sentence, not that he was forced to withdraw his plea, or that the plea was sua sponte, vacated by the court. Thank you. You have some time for two minutes in rebuttal. Good morning. May it please the court, Hannah Stith-Long, on behalf of the Attorney General's Office and the Warden. Most of Constance's arguments in this case hinge on a single allegation of fact that was squarely rejected by the appellate division. He alleges that he was forced to go to trial without having the option to accept an enhanced sentence. In fact, the he had the advice of two counsel, and twice unequivocally, he rejected that offer in favor of going to trial. The five-month gap between the time that the court vacated the plea and the time that the court offered the specific enhanced sentence is of no consequence for either due process or double jeopardy. There was no deprivation of liberty during that five-month period, nor was there any new jeopardy, if there was any jeopardy attached at all before. The attachment of jeopardy? First of all, even if jeopardy did attach, there would have been continuing jeopardy on account of his voluntary choice. And in any case, the court on habeas can't apply a rigid mechanical rule the Supreme Court hasn't established. But to answer the question, no, we believe that jeopardy did not attach at the time of the plea, and for a number of reasons. If we were to find, though, that the conviction violated a clearly established law, then resentencing would be appropriate, right? Your position, though, is that there is no clearly established law. That's correct. There is no clearly established law here. The Supreme Court has never said that jeopardy attaches at the time of plea, although the court has assumed that it attaches after plea and sentencing, and fair-minded jurists disagree on this. The purposes of the double jeopardy clause that the Supreme Court has recognized are not implicated here. The finality of judgments, there wasn't finality here. There was no stress and expense of trial. There was no risk of convicting the innocent, no multiple punishments. The court has not recognized the risk of convicting the guilty as one of the protections of the double jeopardy clause. In any event, it should be pointed out that the only count to which these double jeopardy claims apply is count three. The rest of the counts are not the same offense, and the plea did not result in an acquittal on those counts. There was no determination of facts in the defendant's favor on those counts, and nor did it result in a conviction of those counts. So the only count at issue is count three, and on that count, he made a voluntary choice to go to trial, and that vitiates any double jeopardy claim. He raised no double jeopardy claim. He made a voluntary choice. The Supreme Court has held that voluntary choices to continue the proceedings vitiate double jeopardy claims because they don't involve government oppression, and, of course, the state has an interest in punishing the guilty here. What's your view as to why a conditional plea should be treated differently from an unconditional plea? Well, it has a lack of finality, that being one of the purposes of the double jeopardy clause, to protect the finality of judgments. A plea that's conditional has less finality. Of course, any plea alone without a sentencing is not a judgment at all. So even if it were conditional, our position would be jeopardy doesn't attach at that point, but it makes it all the less final to have it... It attaches upon a judgment where the sentence is pending. Is that the point? Yes. Yes, Your Honor. But in any case, it doesn't matter in this case because there certainly was continuing jeopardy, regardless of whether it attached or not at the time, to count three. Selikoff is not... I want to address the Selikoff argument that my opponent made. It does not require a court faced with a defendant who will not choose an enhanced sentence or withdrawal of the plea to impose an enhanced sentence. If anything, the default should be vacatur of the plea because an enhanced sentence is a deprivation of liberty without due process. Vacatur of the plea is not. There is no right to a plea bargain and there is no right to process in itself. The defendant receives the full measure of due process by going to trial. So if there is to be a default, then it should be in favor of vacating the plea. What this court decided in Selikoff was that the district court erred in deciding that the plea should have been vacated because the court should not have interfered with the trial court's discretion to impose an enhanced sentence where the defendant refused to choose one or the other. My opponent said that this was a package deal. Regardless of whether it was a package deal, detrimental reliance is the kind of reliance that puts a defendant in a position where he cannot be returned to plea pre-status. In this case, the Suffolk County plea occurred first and there's no indication of any detrimental reliance on the record. If the defendant had wanted to be placed in the plea position in Suffolk County, he could have gone back to Suffolk County. He didn't. There was absolutely no... What about the, moving to another point, what about the impact of the Haiti, alleged Haiti crimes? They were properly taken into account as a sentencing factor in sentencing him for his New York crimes. He was a leader in sophisticated organized crime in Haiti and he was again a sophisticated organized crime leader here. How did the court know that? I mean, they get a letter. At what point is the court entitled or can the court depend on a letter that comes from a third party, at least under the New York law? Well, in this, the court is certainly... If we got a letter, we would say, gee, that's nice. But what's the law in New York about getting a letter like this? I mean, why was this letter enough to set the machinery in motion that led to where we are here? There's a difference between getting a letter and relying on the letter. The court, a sentencing court in New York can hear from any party with relevant information and can allow any party with relevant information to respond. It can't occur at sentencing because then the defendant doesn't have an adequate opportunity to respond. But at a pre-sentence conference, any party with relevant information can be permitted to speak under New York law. That's CPL 400.10. In this case, the court didn't just rely on a letter from CCR. CCR included a deposition from the defendant in which he said, I am a leader of FRAP. It included a report of the Organization of the American States based on the testimony of 21 rape victims during the time FRAP was in power and 77 reports of rape, 55 of them against democracy activists or close relatives of democracy activists. There was also... And that's something that the court can rely on in this context? Yes, as long as the court gives the defendant an opportunity, an adequate opportunity to respond and refute anything that might be untrue. There was also a wealth of other evidence. There was the expert testimony and affidavit of Robert McGuire establishing the structure and activities of FRAP. FRAP was a highly structured entity. Ultimately... Would you just remind me, were these things that came in that the court relied on in order to impose the sentence subject of an appeal within the state system? Yes, they can be appealed. Also, by the time of actual sentencing, the court had a wealth of additional evidence, including, I would say most importantly, the defendant's own pro se memorandum in which he corroborated many of the facts that had been presented in other evidence by CCR. He said, I'm the head of the Revolutionary Front for the Advancement and Progress of Haiti, FRAP. And I was the head of the only real opposition to Aristide. I founded FRAP and led it between August 1993 and September 1994. At sentencing, he said, his counsel said for him, read a statement saying, I created FRAP. He corroborated his involvement with the USS Harlan County. He said he organized a mob of FRAP supporters on the dock who then threatened the police trainers coming to help in the return of Aristide with death. He admitted a motive for the CT Solille massacre, namely that Aristide supporters had just burned to death a FRAP member. He didn't contest his control over FRAP. He didn't contest most of the evidence that... He contested the nature of the organization. Yes, he did. He made general denials that FRAP was involved in atrocities. But given the very specific evidence, they were not credible and the court rejected those. He said that Aristide had created a climate of violence and that was the reason for continuing violence afterward, that Aristide had committed torture and lynching. It's similar to the He showed absolutely no remorse for his New York crimes. And the court, in the end, based on one can see in its decision, conducted a sensitive balancing of all the different factors, particularly the broad scope of the fraud in New York, the impact that it has on the community by inflating housing prices, and the fact that this was not his only crime. He had committed a similar scheme in Suffolk and he had this history of leadership in horrendous organized crime. The plea in Suffolk County was taken on January 19, 2007, before the plea in this case was taken. And in Kings County, this case, the connection to the Suffolk County case was that the court promised the sentence to be imposed would be concurrent to Suffolk County. He actually did receive that part of the promise, because in New York, if a new sentence is imposed while an old sentence is still pending, it's concurrent unless the judge specifies otherwise. I'm not aware of that. Thank you. Thank you. I would urge the court to affirm the judgment of Judge Weinstein, because the trial court in this case imposed a fair and just sentence with all of the procedural safeguards to which the defendant was due. Thank you. Mr. Schauer? Just a few comments with respect to the argument of my adversary. The option for an enhanced sentence came long after the court vacated the plea. Once the court vacated the plea, the defendant had to make a determination as to whether or not, again, months later, he wanted to rely on the fact that his rights had been violated by the prior proceeding. And he chose to do that. That is not any sort of waiver of any of his rights. In fact, it reflects that he wanted to keep those rights. The double jeopardy count, relying only to one count here, I think, Your Honors, if you look carefully at the record, if double jeopardy attached only to that one count, he's more than done the sentence on the other counts. He's still incarcerated. The court should give him that relief of releasing him if the court finds on count three, as my adversary argues, that that's the only count that double jeopardy attached to. Our position is that it attached to all of them because it was a bargain for a joint plea, and the other counts were to be dismissed as part of that bargain for a plea. I do think it's your adversary's alternative argument. I agree. The government claims that he could have been placed back in the position that he was. He couldn't. He never could have. The Suffolk County sentence had already been released. He had no basis for going back to Suffolk County and arguing that the plea and sentence that he was already serving should somehow be exonerated or obliterated. There was no way he could be placed back. The last point with respect to CCR and its role in this case and the sentence, even the ultimate sentence, was that although the defendant put in a 300-page response to their papers at the time of his sentence, that response was handed up by his attorney to the court on the day of the sentence. The attorney didn't get the pre-sentence report until the day of the sentence. The court indicated that it read that 300-page memo while it was sitting on the bench. The defendant didn't receive proper effective assistance of counsel with respect to that sentencing advocacy. You made that argument to us. I did make that argument to you, yes. Yes. Yes, it was. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.